damaged. The mate and carpenter entirely corroborate the testimony of the captain.

I think it is clear from the evidence in this case, that there was a delivery of the tin. It was delivered at the owner's urgent request; he wanted it. If he had employed a sufficient number of draymen, he could easily have had it all carried to his store. Even after the draymen stopped work, it could have been done by working on into the evening. Ellsworth had given orders to have it all brought up; he supposed it had been. The difficulty was that his clerk did not employ enough drays. To this hypothesis, it is objected that the captain attempted to take care of the tin by setting a watchman over it, and by piling it up on the wharf and covering it with tarpaulins. From this it is assumed that he knew the tin was at his risk. I do not think so. Seeing the rain coming on, he, as a matter of common prudence, did what any man would do under the circumstances. Delivered or not delivered, he did not want to see the tin spoiled. Besides, he knew that questions might be raised and that an ounce of prevention of litigation, as of anything else, is worth a pound of cure. Then it is said that he had it hauled up to the store in the morning. This does not seem to be so. The draymen, anxious to finish the job they had begun, were there betimes in the morning, taking away the tin. The captain would naturally suppose that they were complying with orders received from Ellsworth. It is said that the custom-house inspector refused to attend. On the contrary, he remained on the wharf till seven o'clock, waiting for the drays to come and take the tin. Under the circumstances, and as Ellsworth had told the ship's agent not to store his freight (which is not contradicted), I think the goods were properly deliverable on the wharf, and that they were so delivered and were at the risk of the libellant.

I have not overlooked the testimony of the libellant himself, and of his warehouse clerk, Daly. The former admits that the captain promised him in the morning to discharge his freight that day; but he adds that he told the captain that he did not require the whole of the freight, but to give him some of it, adding that he supplemented this by two notes asking the captain to give him some of the tin-plate and block tin. Now we have seen the principal note. It says, "some tin and tin plate," it is true; but it adds, "In fact we must get them to-day, cost what it will. We hope you will be able to give us them at once." Ellsworth says the draymen informed him that no more goods would be delivered that night; but the inspector whom he met told him that some of them were on the wharf. He asked if they were protected, and was told that they were covered with tarpaulins. This must have been late in the evening. The libellant, however, seems to have been satisfied. This is the substance of Ellsworth's testimony, so far as it bears on the question. Taking this evidence all together, it does not materially contradict that of the other witnesses. I have already adverted to Daly's evidence. It does not materially alter the case. I think the tin was delivered, and that the libel must be dismissed.

## Case No. 4,412.
### ELLZEY v. MOSOROP.

## Case No. 4,413.
### The ELM CITY.

## Case No. 4,414.
### The ELM CITY.
[6 Ben. 58.] [1]
District Court, S. D. New York. April, 1872. [2]

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2] [Affirmed by circuit court; case not reported.]